IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WICK COMCOR CORPORATION,

    Plaintiff,

vs.                                                  No. CIV 99-1061 JC/KBM (ACE)

JOURNAL PUBLISHING COMPANY,
NEW MEXICO STATE TRIBUNE COMPANY,
ALBUQUERQUE PUBLISHING COMPANY,
and APC COMPANY, a New Mexico
general partnership, doing business as
ALBUQUERQUE PUBLISHING COMPANY,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants' Motion for Partial Dismissal or Summary Judgment on Counts I and III of Plaintiff's First Amended Complaint, filed December 5, 2000 *(Doc. 85)*. The Court previously granted Plaintiff's Motion and Supporting Authorities for Leave to Amend Complaint, filed July 18, 2000 *(Doc. 64)*. *See* Memorandum Opinion and Order, filed February 14, 2001 *(Doc. 107)*. Counts I and III of Plaintiff's First Amended Complaint are now denominated as Counts I and IV in Plaintiff's Second Amended Complaint. *See* First Amended Complaint, filed October 29, 1999 *(Doc. 10)*, compared with Second Amended Complaint, filed February 28, 2001 *(Doc. 110)*. Therefore, Defendants' Motion for Partial Dismissal or Summary Judgment is really directed at Counts I and IV of Plaintiff's Second Amended Complaint. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendants' motion is not well

1

taken and will be denied.

**I.     Background**

During the 1930s, many metropolitan daily newspapers found that vigorous competition resulted in financial difficulties.  *See* H.R. Rep. No. 91-1193, at 2 (1970), reprinted in 1970 U.S.C.C.A.N. 3547, 3548.  In order to avoid elimination, newspapers began to enter into joint operating agreements ("JOA"), whereby separate newspapers combined the economic and business aspects of production while maintaining autonomous editorial and reportorial staffs.  *See id.*  The first JOA was started in Albuquerque, New Mexico, in 1933.  By 1966, there were 22 joint operating agreements in effect throughout the country.

This case involves Defendants who are parties to the first JOA.  Defendant New Mexico State Tribune Company ("NMST") is wholly owned by E.W. Scripps Company ("Scripps"), and it publishes *The Albuquerque Tribune* ("*Tribune*"), a daily afternoon newspaper.  Defendant Journal Publishing Company ("JPC") publishes the *Albuquerque Journal* ("*Journal*"), a morning daily newspaper.  NMST and JPC combine the production aspects of their business under a partnership called the Albuquerque Publishing Company ("APC"), pursuant to their JOA established in 1933.

APC performs a number of different functions for NMST and JPC.  APC sells advertising for the *Tribune* and *Journal*, and it accounts for and collects all circulation and advertising revenue.  In addition, APC prints and distributes the publications from NMST and JPC.  Once APC collects all the revenue from its activities on behalf of the two companies, it deducts the combined operational costs for its services.  The resulting net profit or loss is then split between NMST and JPC, with NMST receiving 40% and JPC receiving 60% of this amount.

Plaintiff Wick Comcor Corporation is an Arizona corporation, duly authorized to conduct business in the State of New Mexico.  Plaintiff publishes the *East Mountain Telegraph*, a general distribution weekly newspaper.  The *East Mountain Telegraph* is distributed in Bernalillo County and surrounding counties and communities.  The newspaper has a paid circulation of approximately 6,500.

The dispute in this case involves the establishment of the *Mountain View Journal* ("*MVJ*") by the Defendants in August of 1999.  The *MVJ* is a weekly newspaper distributed in the following areas:  the east mountain communities of Bernalillo County; Edgewood in Santa Fe County; and in Moriarty and Estancia in Torrance County.  Plaintiff claims that the establishment of the *MVJ* was a concerted effort between NMST and JPC, and both parties financially benefit from the *MVJ* because the production of the *MVJ* is conducted through the APC and their JOA.  However, Defendants claim that the *MVJ* is a wholly owned subsidiary of JPC.  Defendants further claim that NMST has no financial interest in the *MVJ* either through APC or their JOA because NMST does not share in its profits or losses, determine its circulation or advertising prices, or define the market area where it will be distributed.

Plaintiff brings this suit alleging that the establishment and operation of the *MVJ* by the Defendants violates the following provisions of law:  Restraint of Trade Under Section 1 of the Sherman Antitrust Act (Count I); Conspiracy to Monopolize under Section 2 of the Sherman Antitrust Act (Count II); Monopoly and Attempted Monopoly under Section 2 of the Sherman Antitrust Act (Count III); Restraint of Trade under Section 1 of the New Mexico Antitrust Act (Count IV); Conspiracy to Monopolize under Section 2 of the New Mexico Antitrust Act (Count V); and Monopoly and Attempted Monopoly Under Section 2 of the New Mexico Antitrust Act

(Count VI).

Defendants now move for partial dismissal or summary judgment. Defendants first argue that if the *MVJ* is a part of the JOA, then the Newspaper Preservation Act provides Defendants antitrust immunity. Alternatively, Defendants argue that NMST has no interest in the *MVJ*, thereby constituting a unilateral action by JPC which is insufficient to sustain a claim under Section 1 of the Sherman Antitrust Act. In response, Plaintiff claims that the *MVJ* is a part of the Defendants' JOA, thereby establishing a concerted action sufficient to sustain a claim under Section 1 of the Sherman Antitrust Act. In addition, Plaintiff maintains that Defendants are not shielded by the Newspaper Preservation Act because the MVJ is an amendment to the JOA which adds a newspaper publication in violation of 15 U.S.C. § 1803(a).

## II.     Standard of Review

Defendants bring this motion as one for partial dismissal or summary judgment. The Court will treat the motion as one for summary judgment under FED. R. CIV. P. 56 because matters outside the pleadings were received and considered by both parties. Thus, the appropriate standard for this motion is set forth in FED. R. CIV. P. 56(c): summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a summary judgment motion, a court is to view the record "in the light most favorable to the nonmoving party." *Thournir v. Meyer*, 909 F.2d 408, 409 (10th Cir.1990) (citation omitted).

## III.    Analysis

### A.     The Newspaper Preservation Act

4

The first issue the Court must determine is how the Newspaper Preservation Act ("NPA") plays into the posture of this case. In order to understand the implications of the NPA, the Court finds it useful to give a brief history of its development. As previously noted, many metropolitan daily newspapers found it difficult to remain financially viable during the 1930s. In order to keep from going out of business, newspapers began to combine the production aspects of their businesses while maintaining autonomous editorial and reportorial staffs. These arrangements were called joint operating agreements ("JOAs"). However, in 1964, the Department of Justice initiated an investigation into the antitrust implications of JOAs. One year later as a result of the investigation, the Department of Justice sued the publishers of two daily newspapers in Tucson, Arizona, which operated jointly, for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18. *See id.* The trial court found violations of all the provisions, and the U.S. Supreme Court upheld that finding in *Citizen Publishing Co. v. United States*, 394 U.S. 131 (1969).

In response to *Citizen Publishing*, Congress passed the Newspaper Preservation Act ("NPA"), 15 U.S.C. §§ 1801-1804, a mechanism under which at-risk newspapers operating in the same market may combine their printing, production, distribution, and marketing operations without risking a violation of the antitrust laws. Newspapers that were functioning under JOAs at the time the statute was enacted were permitted to continue joint operations without Justice Department approval. *See* 15 U.S.C. § 1803(a). Parties wishing to enter into JOAs after 1970, however, were required to obtain approval from the Attorney General prior to implementation. *See* 15 U.S.C. § 1803(b). In this case, the Defendants' JOA falls under the 15 U.S.C. § 1803(a) because it was established prior to 1970.

5

Returning to the issues at hand, Defendants now move for summary judgment by arguing that if the *MVJ* is a part of the JOA, then the NPA provides Defendants with antitrust immunity. In response, Plaintiff claims that the *MVJ* is a part of the Defendants' JOA, but the *MVJ* is not shielded by the NPA because the *MVJ* is an amendment to the Defendants' JOA which adds a newspaper publication in violation of 15 U.S.C. § 1803(a).

The NPA states: "It shall not be unlawful under any antitrust law for any person to perform, enforce, renew, or amend any joint newspaper operating arrangement entered into prior to July 24, 1970...." 15 U.S.C. § 1803(a). However, the NPA mandates that if a person renews or amends a joint newspaper operating arrangement, then "the terms of a renewal or amendment to a joint operating arrangement must be filed with the Department of Justice and...the amendment...[must] not add a newspaper publication or newspaper publications to such arrangement." *Id.* Accordingly, the Court finds that 15 U.S.C. § 1803(a) operates as follows:

(1)  The Court must first determine if a party is seeking to perform, enforce, renew, or amend a JOA. If a party is seeking to perform or enforce an existing JOA, then the agreement is shielded by antitrust immunity. However, if a party is seeking to renew or amend an existing JOA, then it must comply with two additional requirements.

(2)  If a party is seeking to renew or amend an existing JOA, then the Court must: (a) determine if the party has filed the renewal or amendment with the Department of Justice, and (b) ensure that the renewal or amendment does not add a newspaper publication to the arrangement.

Thus, the first step in this case is to determine whether Defendants are claiming that they are

6

performing, enforcing, renewing, or amending the JOA by adding the *MVJ*.

Here, the Court finds that a genuine issue of material fact exists as to whether Defendants are performing, enforcing, renewing, or amending the JOA. Defendants seem to indicate that the addition of the *MVJ* falls under the provisions of the existing JOA. *See* Dfs.' Memo. at 16-17. Yet, Defendants give no facts to support such a conclusion. For instance, Defendants never point the Court to terms of the existing JOA which contemplate the addition of a publication such as the *MVJ*. Instead, Defendants proceed to the argument that the NPA's prohibition of adding a newspaper publication does not apply to the addition of a "new" newspaper publication such as the *MVJ*. Defendants contend that statute should be construed as to only prohibit the addition of "existing" newspaper publications. Yet, such a position presupposes the fact that the addition of the *MVJ* is an amendment to the JOA.

Thus, the problem with Defendants' argument is two-fold. First, Defendants failed to conclusively establish whether the addition of the *MVJ* should be considered a part of the existing JOA or an amendment to the JOA. Second, even if the Court is to assume that the *MVJ* is an amendment to the JOA, Defendants have failed to establish that such an amendment was filed with the Department of Justice. Therefore, there is no need for the Court to reach the statutory construction issue at this time. In order to receive antitrust immunity, Defendants must first establish either: (1) the *MVJ* falls under the terms of the existing JOA, or (2) the *MVJ* is an amendment that was filed with the Department of Justice. Defendants have failed to present undisputed facts to support either conclusion. Accordingly, Defendants' motion for summary judgment based on the argument that the addition of the *MVJ* is shielded by the antitrust immunity of the Newspaper Preservation Act is hereby denied.

### B.     An Agreement under § 1 of the Sherman Antitrust Act

The next issue raised by Defendants' motion is whether Plaintiff has presented sufficient evidence to establish an agreement under § 1 of the Sherman Antitrust Act. The Sherman Antitrust Act under § 1 provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Regardless of the nature of the practice challenged, in order to prove a violation of § 1 of the Sherman Antitrust Act, a plaintiff must establish the following elements: (1) the existence of a contract, combination, or conspiracy among two or more separate entities; (2) the activities of the two or more separate entities unreasonably restrains trade; and (3) such activities affect interstate or foreign commerce. *See Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220-21 (4th Cir.1994).

Defendants' primary argument focuses on the first element. In other words, Defendants argue that because the *MVJ* is not a part of the JOA, Plaintiff cannot maintain a § 1 violation of the Sherman Antitrust Act because there is no contract, combination, or conspiracy among two or more separate entities. *See* Memorandum in Support of Motion for Partial Dismissal or Summary Judgment on Counts I and III of Plaintiff's First Amended Complaint ("Dfs.' Memo.") at 17, filed December 5, 2000 *(Doc. 86)*.[1]

With respect to the combination or conspiracy requirement of § 1, it is well established that "solely unilateral conduct, regardless of its anti-competitive effects, is not prohibited."

---

[1] Defendants do attempt to argue that Plaintiff has failed to establish evidence under the second and third elements of a § 1 violation of the Sherman Antitrust Act. However, the Court finds that the issues surrounding the second and third elements are not adequately briefed by either party. Therefore, the Court declines to rule on these issues at this time.

*Contractor Utility Sales v. Certainteed Products*, 638 F.2d 1061, 1074 (7th Cir.1981). In order to survive Defendants' motion for summary judgment, Plaintiff must first demonstrate the existence of an agreement, either by direct or by circumstantial evidence. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir.1989). Circumstantial evidence may support the existence of an illegal § 1 agreement. *See id.* However, on summary judgment, antitrust law "limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "To survive a motion for summary judgment ..., a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Id.* at 588 (*quoting Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)); *see also Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1391 (10th Cir.1992).

    In this case, the Court finds that Plaintiff has presented sufficient circumstantial evidence that tends to exclude the possibility that the Defendants acted independently with regard to the establishment of the *MVJ*. First, Plaintiff has established material issues of disputed facts with regard to how Defendants accounted for the *MVJ*. Specifically, APC's books for the month ending August 31, 1999, showed that the profits attributable to *MVJ* were being split with 80% going to the *Journal* and 20% going to the *Tribune*. *See* Ex. D, attached to Pl.'s Response. Defendants respond by arguing that this split in revenue during August was an accounting error which was corrected in the following months. *See* Ex. B, Deposition of Thompson Hughes Lang, at 23-24, attached to Defendants' Reply Brief in Support of Motion for Partial Dismissal or Summary Judgment on Counts I and III of Plaintiff's First Amended Complaint, filed April 9,

9

2001 *(Doc. 114)*. Plaintiff's argue, however, that the 80%/20% split in revenue was set up the same way as other publications shared by the Defendants. Namely, the JPC publishes the following "zoned" editions: *Journal North*, *Westside Journal*, and *Journal South*. These zoned editions are subject to the 80%/20% split in revenue as between NMST and JPC. Thus, Plaintiff argues that Defendants intended to set up the *MVJ* in the same manner as the other zoned editions, and only changed their minds when this lawsuit was initiated. Clearly, as reflected by this evidence, a material issue of fact exists as to whether the Defendants intended to treat the *MVJ* as a separate entity.

By using testimony from company officials, Defendants do attempt to argue that the current organization of *MVJ* was contemplated long before the 80%/20% split in revenue as reflected in the August financials. *See, e.g.,* Exhibit A, attached to Defendants' Reply Brief in Support of Motion for Partial Dismissal or Summary Judgment on Counts I and III of Plaintiff's First Amended Complaint, filed April 9, 2001 *(Doc. 114)*. However, such post-hoc rationalizations are insufficient in a case of this nature. As Plaintiff points out, the entire arrangement and development of the *MVJ* seems to be undocumented and based upon oral agreements. Certainly, one could reasonably infer that the development of a newspaper publication such as the *MVJ* would have generated some form of documentation by the Defendants to indicate that its current arrangement was considered before the initiation of this lawsuit. However, Defendants have failed to present such evidence.

Finally, an agreement between Defendants may be inferred from their handling of the overhead charge attributable to the production of the *MVJ*. In particular, APC charges *MVJ* an overhead charge for the use of its services. In fact, the evidence indicates that there are

10

discrepancies among the Defendants as to when or how the overhead charge was calculated. Thus, Plaintiff has presented sufficient evidence to withstand summary judgment. A genuine issue of material fact exists as to whether there was contract, combination, or conspiracy among the Defendants with regard to the establishment of the *MVJ*. Accordingly, Defendants' motion for summary judgment is denied with respect to the issue of whether there was a contract, combination, or conspiracy among two or more separate entities in violation of § 1 of the Sherman Antitrust Act.

### C.     Pending Motion

The following motion is filed but not completely briefed by the parties: Defendants' Motion for Summary Judgment on Claims of Monopolization, Attempted Monopolization, and Conspiracy to Monopolize, filed December 12, 2000 *(Doc. 88)*. After reviewing the motion, the Court notes that certain issues may now be considered moot in light of this decision. Moreover, the parties have indicated that certain discovery issues are on hold until this decision is handed down. Thus, the parties shall contact the chambers of the Honorable Karen B. Molzen, United States Magistrate Judge, within three (3) days from the date this motion is filed to arrange for a status conference.

## IV.     Conclusion

For the reasons above, the Court finds a disputed issue of material fact exists with regard to whether the *MVJ* is a part of the existing JOA or an amendment to the JOA, thereby making summary judgment on the issue of the NPA inappropriate. The Court further finds that Plaintiff has presented sufficient circumstantial evidence that tends to exclude the possibility that

Defendants acted independently with regard to the establishment of the *MVJ*, thereby making summary judgment on § 1 of the Sherman Antitrust Act inappropriate.

Wherefore,

**IT IS ORDERED** that Defendants' Motion for Partial Dismissal or Summary Judgment on Counts I and III of Plaintiff's First Amended Complaint, filed December 5, 2000 *(Doc. 85)* is hereby **denied**.

**IT IS FURTHER ORDERED** that the parties shall contact the chambers of the Honorable Karen B. Molzen, United States Magistrate Judge, within three (3) days from the date this order is filed to arrange for a status conference.

DATED August 2, 2001.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Marshall G. Martin, Esq.
    Thomas J. McBride, Esq.
    Ryan M. Randall, Esq.
    Hinkle, Hensley, Shanor & Martin, L.L.P.

Counsel for Defendants:

    William S. Dixon, Esq.
    Charles K. Purcell, Esq.
    Rodey, Dickason, Sloan, Akin & Robb, P.A.
    Albuquerque, New Mexico

    Martin R. Esquivel, Esq.
    Dines, Gross & Esquivel P.C.
    Albuquerque, New Mexico