IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WICK COMCOR CORPORATION,

    Plaintiff,

vs.                                                  No. CIV 99-1061 JC/KBM (ACE)

JOURNAL PUBLISHING COMPANY,
NEW MEXICO STATE TRIBUNE COMPANY,
ALBUQUERQUE PUBLISHING COMPANY,
and APC COMPANY, a New Mexico
general partnership, doing business as
ALBUQUERQUE PUBLISHING COMPANY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court for a hearing on January 16, 2002, on Defendants' Motion for Summary Judgment on Claims of Monopolization, Attempted Monopolization, and Conspiracy to Monopolize, filed December 12, 2000 *(Doc. 88)*. The Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that the motion shall be denied.

Defendants first argue that the *East Mountain Telegraph*, *Mountain View Journal*, and *Independent* (collectively, "weeklies") comprise the relevant market in this case, and the *Albuquerque Journal* and *Albuquerque Tribune* (collectively, "dailies") should be excluded. Market definition is a question of fact. *See Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1220 (10th Cir. 1986). A newspaper market is typically broken down into two interdependent markets: one for readers and one for advertisers. As the Supreme Court stated in

*Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 610 (1953), "every newspaper is a dual trader in separate though interdependent markets; it sells the paper's news and advertising content to its readers; in effect that readership is in turn sold to the buyers of advertising space." Moreover, products belong in the same market when they are reasonably interchangeable by consumers for the same purposes. *See Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 899 F.2d 951, 975 (10th Cir. 1990).

In this case, the undisputed evidence shows that the dailies and weeklies have distinct readership markets. The dailies produce news on a more timely basis, with a much broader coverage. In contrast, weeklies produce news on a less timely basis, with a narrower focus on issues of local geographical interest. For instance, if a reader in the East Mountains wants to get news coverage concerning Albuquerque metropolitan, state, national, and international issues, the dailies are the only options because the weeklies do not cover such content. Likewise, the undisputed evidence shows that the dailies and weeklies have distinct advertising markets. Although the dailies and weeklies are competing for the same regional advertisers, it does not necessarily mean that the regional advertisers are buying the same product. Thus, regional advertisers may reach the same customers in the East Mountain communities when advertising in both the dailies and weeklies, but these regional advertisers are using different products. Accordingly, the Court finds that the undisputed evidence establishes that the *Albuquerque Journal* and *Albuquerque Tribune* are not reasonably interchangeable with the *East Mountain Telegraph*, *Mountain View Journal*, and *Independent*; therefore, the dailies are not a part of the relevant market.

However, this finding does not mean that the relevant market is established. Plaintiff

presents evidence to show that the *Independent* may not be reasonably interchangeable with the other two weeklies. *See* Exhibit G, attached to Plaintiff's Response to Defendants' Motion for Summary Judgment on Claims of Monopolization, Attempted Monopolization, and Conspiracy to Monopolize, filed August 20, 2001 *(Doc. 123)*. Therefore, the Court finds that disputed fact issues remain as to whether the *Independent* belongs in the relevant market consisting of the weeklies. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's monopoly claims is hereby denied.

Although the relevant market is still in dispute, the Court will still examine the evidence relevant to monopoly power. Defendants next argue that since the relevant market consists of the weeklies, they are entitled to summary judgment on Plaintiff's monopolization claims because of the *Mountain View Journal's* low market share. Courts have not completely agreed on whether a particular market share should be given conclusive or merely presumptive effect in determining monopoly power, or whether market share is only a starting point in the inquiry into monopoly power. *See Reazin*, 899 F.2d at 967. The Tenth Circuit prefers the view that market share percentages may give rise to presumptions, but will rarely conclusively establish or eliminate monopoly power. *See id.* at 968. Accordingly, the Court finds that the present market share as indicated by the Defendants gives rise to a presumption that the *Mountain View Journal* lacks monopoly power.

The Court now must determine if other evidence indicates Defendants possess monopoly power, thereby rebutting the presumption that the *Mountain View Journal* lacks monopoly power. "[W]hen such a traditional form of proof [as market share data] is lacking, the plaintiff must produce unambiguous evidence that the defendant has the power to control prices or

3

exclude competition." *Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 130 (2d Cir.1986), cert. denied, 454 U.S. 968 (1981). Consequently, entry barriers are relevant in determining whether a firm has monopoly power. *See Reazin*, 899 F.2d at 967. "Entry barriers are particular characteristics of a market which impede entry by new firms into that market." *Id.* In this case, Plaintiff has produced sufficient evidence to show that the *Mountain View Journal's* alleged participation in Defendants' joint operating agreement might operate as a significant entry barrier. If the *Mountain View Journal* is in fact a participant in the joint operating agreement, the *Mountain View Journal* might enjoy substantial cost advantages and economies of scale sufficient to control advertising prices and exclude competition from the other weekly newspapers. When this evidence is considered in conjunction with the fact that the *East Mountain Telegraph's* market share has been on a downward spiral since the entry of the *Mountain View Journal,* the Court finds that Plaintiff has provided sufficient issues of disputed fact to rebut the presumption that the *Mountain View Journal* lacks monopoly power. Accordingly, after consideration of the evidence regarding monopoly power, the Court finds that it is still appropriate to deny Defendants' motion for summary judgment with respect to Plaintiff's monopoly claims.

Defendants next argue that summary judgment is appropriate on Plaintiff's attempted monopolization claims because the *Mountain View Journal* exhibits no dangerous probability of achieving monopoly status due to its low market share. Defendants also argue that there are no meaningful entry barriers. "To establish the dangerous probability of success element of an attempted monopolization claim, 'the plaintiff must show that there was a dangerous probability the defendant would achieve monopoly status as the result of predatory conduct alleged by the

4

plaintiff.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 894 (10th Cir. 1991) (*quoting Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 885 F.2d 683, 693 (10th Cir. 1998), cert. denied, 498 U.S. 972 (1990)). Factors relevant to determining dangerous probability include such things as a defendant's market share, the number and strength of other competitors, market trends, and entry barriers. *See id.*; *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.*, 783 F.2d 159, 162 (10th Cir. 1986).

In this case, fact issues preclude summary judgment on the issue of whether the *Mountain View Journal* stands a dangerous probability of achieving monopoly status in the relevant market. As previously stated, Plaintiff presented evidence to show that the *Mountain View Journal's* alleged participation in the joint operating agreement might act as an entry barrier. Plaintiff also presented evidence to show that the *East Mountain Telegraph* is losing market share. Finally, Plaintiff presented evidence to show that all three weeklies are losing money, and the *Mountain View Journal* is allegedly the only publication that can withstand such a financial position because of its affiliation with the other Defendants. Accordingly, the Court hereby denies Defendants' motion for summary judgment regarding Plaintiff's attempted monopolization claims.

Defendants further argue that summary judgment is appropriate on Plaintiff's conspiracy to monopolize claims. In support of this proposition, Plaintiff makes three arguments: (1) the Journal Publishing Company did not conspire with the New Mexico State Tribune Company because the Journal Publishing Company acted on its own in establishing the *Mountain View Journal*; (2) the Albuquerque Publishing Company cannot conspire with its owner, the Journal Publishing Company, because it lacks the legal power to disobey; and (3) the Albuquerque Publishing Company does not harbor any specific intent to monopolize the East Mountain

5

newspaper market.

With respect to Defendants' first argument, the Court has already disposed of this issue in its Memorandum Opinion and Order, filed August 2, 2001 *(Doc. 117)*, whereby the Court determined that issues of fact exist as to whether the Journal Publishing Company and the New Mexico State Tribune Company acted independently in forming the *Mountain View Journal*. With respect to Defendants' second argument, they presumably rely on *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752, 776 (1984), which holds that a parent and its wholly-owned subsidiary represent a single economic entity and are thus incapable of conspiring to monopolize. However, the Albuquerque Publishing Company is not a wholly owned subsidiary because of a 50/50 split in control between the Journal Publishing Company and the New Mexico State Tribune Company. Therefore, *Copperweld* is inapplicable. Finally, with respect to Defendant's third argument, proof of unlawful conduct may be used to infer specific intent to monopolize. *See California Computer Products, Inc. v. International Business Machines Corp.*, 613 F.2d 727, 737 (9th Cir. 1979). Thus, Plaintiff's evidence that the Defendants allegedly failed to comply with the Newspaper Preservation Act may constitute unlawful conduct, thereby satisfying the specific intent requirement. Since the Court has already determined that disputed fact issues exist with respect to the issues involving the Newspaper Preservation Act, the Court similarly finds that disputed fact issues exist with regard to the specific intent requirement. Accordingly, the Court hereby denies Defendants' motion for summary judgment regarding Plaintiff's conspiracy to monopolize claims.

Finally, Defendants raise two subsidiary issues that need only brief examination. First, Defendants contend that Plaintiff's assertion of monopoly leveraging is not a distinct antitrust

offense. According to its brief, Plaintiff apparently agrees with this proposition. Therefore, the Court does not need to address this matter. Second, both parties agree that the claims under the New Mexico Antitrust Act are controlled by the Court's decision on the federal antitrust issues. Therefore, for the above reasons, the Court hereby denies Defendants' motion for summary judgment with respect to Plaintiff's claims under the New Mexico Antitrust Act.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment on Claims of Monopolization, Attempted Monopolization, and Conspiracy to Monopolize, filed December 12, 2000 *(Doc. 88)* is hereby denied.

DATED January 24, 2002.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Marshall G. Martin, Esq.
    Thomas J. McBride, Esq.
    Ryan M. Randall, Esq.
    Hinkle, Hensley, Shanor & Martin, L.L.P.

Counsel for Defendants:

    William S. Dixon, Esq.
    Charles K. Purcell, Esq.
    Rodey, Dickason, Sloan, Akin & Robb, P.A.
    Albuquerque, New Mexico

    Martin R. Esquivel, Esq.
    Dines, Gross & Esquivel P.C.
    Albuquerque, New Mexico